Lawrence F. STEPHAN, et al., Plaintiffs,

v.

ROCKY MOUNTAIN CHOCOLATE FACTORY, INC., Defendant.

No. 96 C 4587.

United States District Court,
N.D. Illinois,
Eastern Division.

March 7, 1997.

Scott H. Reynolds and Mitchell Bryan of Levenfeld, Eisenberg, Janger, Glassberg & Halper, Chicago, IL, for Plaintiffs.

George N. Vurdelja, Jr., John M. Heaphy, Jr. and Griswold L. Ware of Vurdelja & Heaphy, Chicago, IL, for Defendant.

### MEMORANDUM OPINION AND ORDER [1]

SHADUR, Senior District Judge.

Rocky Mountain Chocolate Factory, Inc. ("Rocky Mountain") has taken a

1. This memorandum opinion and order had al-  ready been prepared by this Court, and was in

timely appeal from this Court's November 27, 1996 final order (see the "Opinion" reported at 948 F.Supp. 765[2]) in this action that had been brought against Rocky Mountain by Lawrence Stephan ("Lawrence") and his wife Patricia (collectively "Stephans"). Then last week (on February 28) Rocky Mountain's counsel came before this Court to present a motion that counsel characterized as seeking to supplement the record on appeal. This Court denied that motion in an oral ruling, explaining to counsel that:

1. It is inappropriate to attempt to enlarge a record on appeal, as the motion sought to do, with a document that was *not* part of the record before this Court and that had never been submitted to this Court for its consideration in conjunction with Rocky Mountain's alternative motion (a) for dismissal under Fed.R.Civ.P. ("Rule") 12(b)(6) or (b) for summary judgment under Rule 56. Supplementation of an appellate record ordinarily cures a gap that has been created by an unintended omission, from the record transmitted to the Court of Appeals, of something that *was* part of the grist for the district court's decision on appeal.

2. To the extent that the new information that was being proffered by Rocky Mountain was asserted as something that would have made a difference in the consideration or disposition of the case if it had been submitted in the first instance, the most appropriate procedure would be to file a Rule 60(b) motion in the district court. As this Court elaborated in its February 28 oral ruling, the better view in that situation (though it is not universally held, see 11 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure: Civil* 2d ["Wright, Miller & Kane"] § 2873 (2d ed.1995)) is that the district court then has the power to deny the motion if it is considered to be lacking in merit, while if the district court is inclined to grant relief it should request a remand to revest jurisdiction in the district court to permit it to do so (*Brown v. United States*, 976 F.2d 1104, 1110–11 (7th Cir.1992); *Graefenhain v. Pabst Brewing Co.*, 870 F.2d 1198, 1211 (7th Cir.1989); and see also 11 Wright, Miller & Kane § 2873, at 432–34 & nn. 6–8 and numerous cases cited there).

Now Rocky Mountain's counsel has indeed returned to this Court with a Rule 60(b) motion seeking relief from the adverse judgment that the Opinion ordered to be entered. In brief Rocky Mountain asserts (and this Court credits for purposes of discussion) that when this Court was in the course of considering Rocky Mountain's Rule 12(b)(6)/Rule 56 motion and requested that it be provided with some specified further documentation by the litigants to facilitate such consideration, the parties agreed that Stephans' counsel would submit a copy of the Franchise Agreement ("FA") between Rocky Mountain and Rocky Mountain Chocolate of Illinois, Inc.,[3] while Rocky Mountain's counsel would provide this Court with a copy of the Lease between Equity Office Properties, L.L.C. and Rocky Mountain. Counsel for the parties quite understandably agreed that there was no need for each party to supply this Court with a copy of each document.

the process of transcription and execution for delivery to the parties, when counsel for plaintiffs called this Court's chambers to advise that they had prepared a preliminary response in opposition to the motion referred to here. As this opinion reflects, it has been based on the motion's substantive lack of merit, rather than on any perceived procedural defects—hence its preparation without this Court's having requested any response. That "preliminary response" has now been delivered to this Court's chambers, and it raises a whole series of other problems with the motion (including the unavailability of the requested relief as a matter of law and the claimed untimeliness of the motion). Given the patent lack of substantive merit involved in the motion, this Court has made no effort to speak to the matters asserted in the response—if valid, those matters would simply provide an additional reason or reasons for denying the motion.

**2.** Citations to the Opinion will take the form "Opinion at ——," reflecting the page number but omitting the volume number in F.Supp.

**3.** Rocky Mountain's current motion mischaracterizes the FA as having been entered into between *Lawrence* and Rocky Mountain. It was *not,* as the document itself expressly reflects, and indeed that was part (but by no means all) of the reasons that Rocky Mountain lost the case before this Court.

In implementing that understanding, Stephans' counsel provided this Court with a copy of the FA that was signed by Rocky Mountain and by Rocky Mountain Chocolate Factory of Illinois, Inc. ("Rocky Mountain–Illinois"), but Ex. E of which [4] was not signed by Lawrence and the other corporate principals. Rocky Mountain's counsel was unaware of the absence of such signatures on the photocopied counterpart of Ex. E delivered to this Court (and in fact Rocky Mountain's own retained counterpart of the document included a fully executed Ex. E). Nor were Rocky Mountain's counsel alerted to the matter, they say, by the Opinion's passing reference to the absence of signatures on the Ex. E personal undertaking (Opinion at 775). Counsel say that it was only in the course of preparing their initial brief for the Court of Appeals that they learned of the discrepancy.

But the problem with Rocky Mountain's current motion is that the presence or absence on FA Ex. E of Lawrence's signature (or those of Patricia and their colleagues in the ownership of Rocky Mountain–Illinois, the only Franchisee identified in the FA) is totally immaterial as a legal matter—it is unquestionably nonoutcome-determinative. Any examination of Opinion at 775, with its brief reference to what this Court then understood (based on the document presented to it) to be the lack of signatures on that Exhibit, clearly reflects that the absence-of-signature reference was totally collateral—an added fillip that had no legal significance whatever.

Quite to the contrary, the significance of FA Ex. E to this Court's decision was not at all a function of whether or not it was actually signed by Lawrence or the other corporate principals, but rather that FA Ex. E itself (whether or not executed) further confirmed what the FA itself nailed down: that the

Illinois corporation, and *not* Lawrence or his colleagues as individuals, was the sole Franchisee (see not only the analysis in Opinion at 774–75 but also the telling signature page on the body of the FA, Ex. 3 to the Opinion, Opinion at 782 [5])—just as Lawrence individually was also not embraced within the term "Sublessee" and hence was not personally responsible for Sublessee's default (see Opinion at 774). Indeed, the Opinion's analysis and conclusion would have been precisely the same if this Court's purely collateral "by the way" reference to what was then thought to be the nonsigning of FA Ex. E had been omitted entirely—if the paragraph in Opinion at 775 that mentioned that fact had simply read instead:

> That personal undertaking [6] would of course have been unnecessary if Lawrence (for example) had already accepted personal responsibility by executing the FA. In addition, Ex. E itself reconfirms that only Rocky Mountain–Illinois, and *not* Lawrence and the other individuals, was the Franchisee.

This Court of course has no knowledge of the circumstances that led to the mistaken document delivery by Stephans' counsel, nor does that matter. What does control here is that the issue raised by Rocky Mountain's current motion is a total irrelevancy, having no legal significance whatever. There is no reason to depart from either the analysis or the decision reached in the Opinion. Rocky Mountain's Rule 60(b) motion is denied in its entirety.

4. As Opinion at 775 states, that document—though entitled "Nondisclosure and Noncompetition Agreement"—actually provided for personal undertakings and guaranties to be entered into by the listed "beneficial owners, directors and principal officers" of the corporate Franchisee—Lawrence, Patricia and two others.

5. In that latter respect, numbered paragraph 3 in Opinion at 775 points to the special significance of the signatures to the FA itself in the form that Rocky Mountain had sought to obtain them and as Lawrence and the others had altered that form—specifically eliminating any potential *individual* inclusion of Lawrence or his colleagues within the "Franchisee" concept.

6. [Footnote by this Court] As Opinion at 775 reflects, that language refers to FA Ex. E.